Case 3:23-cv-00358   Document 19   Filed on 12/05/24 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
December 05, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:23-cv-358

A.P., by and through her next friends, E.P. and D.P., *Plaintiff*,

v.

Pearland Independent School District, *Defendant*.

### MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, *United States District Judge*:

Before the court are the parties' cross-motions for summary judgment. Dkts. 13, 15. The court will grant the defendant's motion.

## I.  Background

A.P. is an eighteen-year-old student who resides within the Pearland Independent School District ("Pearland"). Dkt. 13 ¶ 1. A.P. attended Pearland schools from the fall of 2018 through the spring of 2022. *Id.* During that time, A.P. struggled academically but did not receive special-education services and was not diagnosed with a qualifying disability. *Id.*

In 2018, A.P. returned to a traditional school setting after being homeschooled. Dkt. 15 at 10. Although A.P. passed all her classes that school

year, she failed the STAAR exams in math, reading, and writing. *Id.*, Dkt. 13 ¶ 6. Pearland placed A.P. in Response to Intervention ("RtI")[1] due to the failed STAAR tests. Dkt. 13 ¶ 6. A.P. "responded positively to general education interventions" and continued to pass her classes. Dkt. 15 at 10. She was removed from RtI the following year. Dkt. 13 ¶ 6.

In the 2020–21 school year, A.P. missed between 10 and 16 meetings of each of her classes each semester, representing between 15% and 29% of total instruction time. Dkt. 15 at 11, A.R. at 21.[2] A.P. failed five out of her seven core classes and failed the Algebra I STAAR exam. Dkt. 13 ¶ 7. When the school reached out to A.P.'s parents about her attendance record, they explained her absences as the result of menstrual cramps, family travel, and colds or indigestion. Dkt. 15 at 12. The following summer, A.P. passed English 1, Biology, and Algebra 1 during summer school. *Id.* at 15.

---

[1] RtI is a supplemental program to help struggling learners succeed before a special-education assessment is warranted. *Response to Intervention*, TEX. EDUC. AGENCY, https://tea.texas.gov/academics/special-student-populations/special-education/programs-and-services/response-to-intervention (last visited Dec. 05, 2024). A.P. received intensive, individualized support through Power Math and Power Reading classes. Dkt. 13 ¶ 6.

[2] The administrative record, provided via physical USB drive, are consecutively paginated and include the decision, pleadings, exhibits, and transcripts. Dkt. 14

In the 2021–22 school year, A.P. enrolled in all pre-AP or AP courses despite her previous academic record and recommendations from teachers to stay on level. *Id.* at 16. A.P. scored well on some assignments in class but failed every core class in the first semester. *Id.* at 17; 13 ¶ 7. Between the beginning of the school year and February 2022, A.P. missed 27 instruction days, or 25% of total classroom instruction. A.R. at 9.

On September 1, 2022, A.P.'s parents requested a due-process hearing under the Individuals with Disabilities Education Act ("IDEA"). *Id.* at 6. On October 6, 2022, Pearland offered to conduct a full individual evaluation ("FIE") to determine whether A.P. required special education. *Id.* at 19, 13 ¶ 23. A.P.'s parents did not consent to the FIE and instead submitted A.P. to an independent educational evaluation ("IEE") by Dr. Michael Roman. Dkts. 13 ¶ 27, 15 at 20.

The due-process hearing was held before a special-education hearing officer ("SEHO") in June 2023. Dkt. 15 at 6. On July 28, 2023, SEHO concluded that A.P.'s parents failed to prove that Pearland violated IDEA. A.R. at 26–27. A.P. now appeals that decision.

## II.   Legal Standards

### A. Review of Due-Process Hearings

A district court reviews the decision of a due-process hearing officer "virtually de novo." *Dallas Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 309 (5th Cir. 2017) (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997)). "[I]n IDEA proceedings, summary judgment is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Seth B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 967 (5th Cir. 2016) (citation and internal quotation marks omitted). The court "receives the records of the administrative proceedings and also takes additional evidence at the request of any party." *Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d 576, 582–83 (5th Cir. 2009). "When no new evidence is presented to the district court in an IDEA suit[,] the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *D.C. v. Klein Indep. Sch. Dist.*, 711 F. Supp. 2d 739, 744 (S.D. Tex. 2010) (cleaned up).

## B. "Child Find"

Under IDEA, a school has an obligation to identify, locate, and evaluate "children with disabilities . . . who are in need of special education and related services." 20 U.S.C. § 1412(a)(3). Whether a school has violated this so-called "child find" obligation turns on three inquiries: "(1) the date the child find requirement was triggered due to notice of a likely disability; (2) the date the child find duty was ultimately satisfied; and (3) the reasonableness of the delay between these two dates." *Spring Branch Indep. Sch. Dist. v. O.W. ex rel. Hannah W.*, 961 F.3d 781, 793 (5th Cir. 2020).

While there is "no bright-line rule, a school district generally has sufficient notice [of a likely disability] if it is aware of facts suggesting the child has a disability and that the child is struggling academically." *D.C. v. Klein Indep. Sch. Dist.*, 860 F. App'x 894, 901 (5th Cir. 2021). Importantly, not every student with failing grades and poor attendance is a student with a disability that triggers child find. *Alvin Indep. Sch. Dist. v. A.D.*, 503 F.3d 378, 384 (5th Cir. 2007). To trigger child find, there must also be a need for special-education services specifically due to the student's disability. *D.G. v. Flour Bluff Indep. Sch. Dist.*, 481 F. App'x 887, 893 (5th Cir. 2012). All relevant factors must be taken together to determine whether the school had

notice of a likely disability requiring special-education services. *Krawietz v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 677 (5th Cir. 2018).

### C. FAPE Obligation

"IDEA's purpose is to ensure that children with disabilities have access to 'free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" *C.G. v. Waller Indep. Sch. Dist.*, 697 F. App'x 816, 818 (5th Cir. 2017) (quoting 20 U.S.C. § 1400(d)(1)(A)). Under IDEA, "parents and school districts collaborate to develop an Individualized Education Plan ('IEP') that is reasonably calculated to enable the child to receive educational benefits." *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1008 (5th Cir. 2010) (citation and internal quotation marks omitted). IEP services are critical to a child's access to FAPE. "A child experiences an egregious loss of educational opportunity when the child is erroneously denied eligibility for special education services." *D.C. v. Klein Indep. Sch. Dist.*, No. 4:19-CV-000212020, WL 2832968, at *7 (S.D. Tex. May 29, 2020), *aff'd*, 860 F. App'x 894 (5th Cir. 2021) (citation and internal quotations marks omitted).

"To be eligible for [special-education] services a student must (1) have a qualifying disability and (2) by reason thereof need special education and

related services." *D.L. v. Clear Creek Indep. Sch. Dist.*, 695 F. App'x 733, 737 (5th Cir. 2017) (citing *Alvin Indep. Sch. Dist. v. A.D.*, 503 F.3d 378, 382 (5th Cir. 2007)). "In making this determination, a state or local education agency . . . must conduct a 'full and individual evaluation' following statutorily prescribed standards." *A.D.*, 503 F.3d at 382.

## III. Analysis

A.P. first contends that Pearland violated its child-find obligations in failing to timely identify and evaluate A.P for special-education services. Dkt. 13 ¶ 1. A.P. further argues that Pearland committed a separate IDEA violation in finding her ineligible for special-education services based on the reports of her expert, Dr. Roman. *Id.* ¶ 2. The court will address each alleged violation in turn.

### A. Pearland's Child-Find Obligation

Pearland maintains that their child-find obligations were not triggered until A.P.'s parents "filed the due process hearing request" on September 1, 2022, and directly notified the district of "their suspicion that A.P. was a student with a disability, specifically dyslexia." Dkt. 15 at 28. But A.P. contends that Pearland's child-find obligations were triggered well before the hearing request. Specifically, A.P. argues that her academic struggles and attendance issues were more than sufficient to trigger Pearland's child-find

obligations. Dkt. 13 ¶¶ 5–17. Based on the entire administrative record, the court concludes that Pearland's child-find duty was not triggered until September 1, 2022.

A.P.'s poor academic performance in 2020 did not trigger child find because Pearland did not reasonably suspect her failing grades resulted from a disability or that special-education services were needed. Pearland correctly states that "[t]he salient question is not simply how many classes the student failed or how many suspensions they accumulated; the relevant question is whether those factors, in the context of the student's individual circumstances, would cause a reasonable school official to suspect a disability and need for specialized instruction." Dkt. 18 at 8; *accord A.D.*, 503 F.3d at 384 (relying on teachers' testimony that a student did not need special education even with failing grades due to external circumstances that affected his ability to study and behavior). Examining the circumstances as a whole, A.P.'s poor academic performance was not indicative of a disability.

First, Pearland reasonably did not suspect that A.P. needed special-education services because they "reasonably attributed [A.P.'s] low grades to her lack of consistent attendance." Dkt. 15 at 24. IDEA requires that the need for special education must be by reason of the qualifying disability, not an external factor. *A.D.*, 503 F.3d at 384. In A.P.'s case, the school officials were

reasonable in concluding that her underachievement was the result of lack of instruction arising from absenteeism, for which special education is not an appropriate remedy. *See* 34 C.F.R. § 300.309(b). The nature or pattern of A.P.'s absences also did not themselves signal a disability. While chronic absenteeism may sometimes indicate social or emotional issues, A.P.'s parents consistently provided benign explanations for her absences. Dkt. 15 at 12; *c.f. Malloy v. D.C.*, No. 20-CV-03219 (DLF), 2022 WL 971208, at *2 (D.D.C. Mar. 30, 2022) (considering unexcused absences escalated to court referral with no attention paid by the school as a child-find trigger).[3] It was reasonable for Pearland to conclude that A.P.'s struggles were largely driven by her chronic absenteeism.

Secondly, there was no additional evidence of concerning behaviors to raise suspicion of a disability. Child find is triggered when failing grades are "taken together" with additional factors, such as relevant behavioral, emotional, or social issues. *Krawietz*, 900 F.3d at 677 (a student's "academic decline, hospitalization, and incidents of theft" were sufficient child-find triggers "taken together"); *Malloy*, 2022 WL 971208, at *2 (behavioral

---

[3] While A.P. is correct that parents have no duty to disclose concerns of a disability, it would be unreasonable for the court to expect a school to push back against parental excuses, particularly in the absence of any other issues that would raise suspicion of a disability.

struggles such as "refusing to do work, getting up and walking around during class, and banging on the classroom door while cursing after showing up late to class" in addition to unexcused absences and "trouble retaining content" triggered child find). While "behavioral issues do not *ipso facto* signify a disability," the court must consider the totality of circumstances. *Leigh Ann H. v. Riesel Indep. Sch. Dist.*, 18 F.4th 788, 797 (5th Cir. 2021). The administrative record here does not suggest that A.P. had any such behavioral, emotional, or social issues at school that would alert Pearland of a possible disability. Dkt. 15 at 12–13.

Lastly, A.P.'s teachers have stated they suspected neither a disability nor any need for special-education services. Dkt. 15 at 14–17. Testimony of teachers who observe "educational progress first-hand [] is more reliable than much of the testimony" from a student's physicians. *A.D.*, 503 F.3d at 384. And the administrative record supports the teachers' belief that A.P. did not need special-education services. In 2021, A.P. earned credit in three of her failed courses through summer school. A.R. at 9. One of A.P.'s ninth-grade teachers testified that she did not have reason to believe that A.P.'s academic struggles were the result of a disability because A.P. "was on top of it . . . knew what she was reading . . . understood what was happening" and could answer questions. A.R. at 1471. A.P.'s teachers–and by extension,

Pearland–reasonably believed that A.P.'s academic record was a result of her lack of instruction and nothing else.

In sum, A.P.'s teachers viewed her as a bright, capable student who previously performed well, and exhibited little to no emotional or behavioral problems. But when A.P. began to miss classes, her performance dropped dramatically. In this context, it was reasonable for Pearland to not suspect a disability. As Pearland's expert testified at the due-process hearing, "if you're not at scho0ol, you're not able to learn effectively." A.R. at 1620. The court agrees with the SEHO's conclusion that Pearland's child-find duties were not triggered until the due-process hearing request on September 1, 2022. As such, Pearland did not violate its child-find obligations. [4]

### B. A.P.'s Special-Education Qualification

A.P. next contends the SEHO erred in concluding that she did not qualify for special-education services based on the report of A.P.'s expert, Dr. Roman. Dkt. 13 ¶¶ 25–27.

---

[4] The parties agree that Pearland satisfied child find when it offered to evaluate A.P. on October 6, 2022. Dkts. 13 ¶ 23; 15 at 28. Pearland's one-month delay in preparing a written response falls well within the bounds of reasonable. *Dallas Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 321 (5th Cir. 2017). Based on the September 1, 2022, date that child find was triggered, Pearland clearly met its child-find obligations.

Not every student with a disability is eligible for IDEA's benefits. *A.D.*, 503 F.3d at 382. A student must both "(1) have a qualifying disability and (2) 'by reason thereof need special education and related services.' . . . In making this determination, a state or local education agency . . . must conduct a [FIE] following statutorily prescribed standards." *Id.* (cleaned up). The FIE must meet extensive statutory requirements. 34 C.F.R. §§ 300.304–306. Teacher observations "are especially instructive" as part of the FIE "as [teachers] spend more time with students than do outside evaluators." *D.L.*, 695 F. App'x at 737. A private evaluation that solicits only parent responses and "does not provide any assessment of [the student's] academic functioning in an educational setting" is "limited in scope, and therefore, cannot provide the full information necessary to determine whether [the student's] presumed disabilities . . . predicated a need for special education." *R.B. v. N.E. Indep. Sch. Dist.,* No. SA-20-CV-01441-JKP, 2022 WL 488500, at *14 (W.D. Tex. Feb. 16, 2022); *c.f. Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1292 (5th Cir. 1991) (stating that even when a pediatrician had known the child for longer and observed the student "in a school environment only once for a short period of time," this could not be favored over the teacher's report).

Dr. Roman's report does not establish that A.P. qualifies for special-education services under IDEA. An independent diagnosis and a record of failure in the absence of special-education services are not always sufficient to show that those services are necessary. *See, e.g., A.D.*, 503 F.3d at 384 (holding that special education was not necessary even though the student had a qualifying diagnosis and "failing grades on various exams and progress report cards"). Dr. Roman did not address or effectively rule out other possible causes for A.P.'s poor academic record, such as absences. A.R. at 17. He did not observe A.P. in a classroom setting, collect information from A.P.'s teachers, or have her teachers complete rating scales to understand how A.P. responded to instruction. *Id.* Without this information, he is unable to draw a connection between his diagnosis of a special learning disability and a necessary IEP.

A.P.'s teachers, who know her educational capacity best, paint a different picture. Even after a year and a half of failing grades, they did not refer A.P. for an evaluation for special-education services. Dkt. 15 at 16. Instead, A.P.'s teachers determined the proper remedy was to encourage better attendance in class and tutorials. *Id.* at 16–17. They consistently stated they believed her academic record was the result of her poor participation and that she was successfully learning the material when she applied herself.

*Id.* at 14–17. Given the importance of A.P.'s teachers' informed opinions and the inadequacy of Dr. Roman's evaluation, A.P. has failed to prove she was a student with a disability under IDEA.

\*   \*   \*

For the reasons stated above, Pearland's motion for summary judgment is granted. Dkt. 15. A.P.'s cross-motion for summary judgment is denied. Dkt. 13. A final judgment will issue separately.

Signed on Galveston Island this 5th day of December, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE